Justin Augustine (CA Bar No. 235561)
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org

Collette L. Adkins Giese (MN Bar No. 035059X)*
Center for Biological Diversity
P.O. Box 339
Circle Pines, MN  55014-0339
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkinsgiese@biologicaldiversity.org

Attorneys for Plaintiff Center for Biological Diversity

*Seeking admission *pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a non-profit organization; <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF THE INTERIOR; SALLY JEWELL**, Secretary of the Interior; **U.S. FISH AND WILDLIFE SERVICE; DAN ASHE**, Director, U.S. Fish and Wildlife Service; <br><br> Defendants. | Case No._____ <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> ADMINISTRATIVE PROCEDURE ACT CASE |

## INTRODUCTION

1.     Plaintiff Center for Biological Diversity ("the Center") challenges the failure of Defendants U.S. Department of the Interior; Sally Jewell, Secretary of the Interior; U.S. Fish and Wildlife Service; and Dan Ashe, Director of the U.S. Fish and Wildlife Service (collectively, "FWS") to comply with section 7 of the Endangered Species Act ("ESA") and its implementing regulations, as well as section 706 of the Administrative Procedure Act ("APA").  Specifically,

FWS has failed to complete interagency consultation regarding the effects of three pesticides on two endangered species in the California Bay Delta within the timelines required under the ESA and its implementing regulations.

2.     Interagency consultation is a central feature of the ESA's framework for protecting endangered and threatened species.  Through the consultation process, federal agencies work with expert federal wildlife agencies, including FWS, to ensure that their actions do not jeopardize the survival of threatened or endangered species.

3.     As a result of previous litigation and a court-approved settlement, the Environmental Protection Agency ("EPA") determined that dozens of registered pesticides are likely to adversely affect listed species in the California Bay Delta and requested consultation with FWS on the impacts of these pesticides. Three of these pesticides – atrazine, alachlor and 2,4-D – and two listed species – the Delta smelt and Alameda whipsnake – are at issue in this Complaint.

4.      Almost six years have passed since EPA attempted to initiate the first of these consultations, and FWS has not completed a single consultation to ensure that pesticides will not cause jeopardy to listed species in the California Bay Delta or adversely modify their habitats. Through this ongoing delay, FWS has failed to comply with the ESA's strict time limits for completion of the section 7(a)(2) consultation process.  The agency's delay in completing the required consultations allows toxic pesticides to continue to harm the species and contaminate their habitats.

5.     Through this Complaint, the Center seeks injunctive and declaratory relief, including an order compelling FWS to complete the consultations and placing restrictions on pesticide use to prevent jeopardy to the listed species until consultation is completed.

## JURISDICTION

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 16 U.S.C. § 1540(g)(1)(A) (ESA citizen suit provision) and 5 U.S.C. § 702 (APA).

7. The Center provided FWS with at least 60 days notice of the ESA violations alleged herein as required by 16 U.S.C. § 1540(g)(2)(A).  FWS has not remedied the violations set out in that 60-day written notice.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because a substantial part of the agency's violations of law occurred and continue to occur in this district and injury to the Center and its members occurred and continues to occur in this district.

## INTRADISTRICT ASSIGNMENT

9. Pursuant to Civil Local Rules 3-2 and 3-5, the appropriate intradistrict assignment of this case is to either the San Francisco Division or the Oakland Division because a substantial part of the agency's violations of law occurred and continue to occur in the counties of Alameda, Contra Costa, Marin, San Francisco, Santa Clara, Santa Cruz, and Sonoma, which are within the range of the Delta smelt or the Alameda whipsnake.

## PARTIES

10. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) organization with over 50,000 active members, with offices in San Francisco, California and elsewhere across the country.  The Center and its members are concerned with the conservation of imperiled species, including the Alameda whipsnake and Delta smelt, and the effective implementation of the ESA.  Recognizing that pesticides are one of the foremost threats to the earth's environment, biodiversity, and public health, the Center works to prevent and reduce the use of harmful pesticides and to promote sound conservation strategies.

11. The Center's members include those who have visited areas where the Alameda whipsnake and Delta smelt are known to occur.  They use these areas for observation of these listed species and other wildlife; research; nature photography; aesthetic enjoyment; and recreational, educational, and other activities.  The Center's members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from these listed species and their habitats.  Those members have concrete plans to continue to travel to and recreate in areas

where they can observe the Alameda whipsnake and Delta smelt and will continue to maintain an interest in these species and their habitats in the future.

12.     The above-described interests of the Center and its members have been and are being adversely affected by FWS's failure to complete consultation on the impacts of pesticides on the Alameda whipsnake and Delta smelt.  Once in the environment, pesticides impact listed species through acute and chronic effects and contamination of habitats.  If FWS completed consultation as required, FWS would detail how the pesticides are affecting the Alameda whipsnake and Delta smelt and their habitats and, if necessary, would suggest reasonable and prudent alternatives to protect the species. 16 U.S.C. § 1536(a)(3).

13.     Unless the requested relief is granted, the Center's interests will continue to be adversely affected and injured by the agency's failure to complete the consultations, as well as by the ongoing harm to the Alameda whipsnake and Delta smelt and their habitats as a result of ongoing pesticide use.  The injuries described above are actual, concrete injuries that are presently suffered by the Center and its members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the agency's failure to complete consultations to ensure that EPA's pesticide registrations do not affect listed species.  The relief sought herein – an order compelling completion of consultation and placing restrictions on pesticide use in habitats of the Alameda whipsnake and Delta smelt until the agency brings itself into compliance with law – would redress the Center's injuries.  The Center has no other adequate remedy at law.

14.     Defendant U.S. DEPARTMENT OF THE INTERIOR is a federal agency charged with ESA consultation obligations.

15.     Defendant SALLY JEWELL is the Secretary of the Interior.  She is sued in her official capacity.  The Secretary is the federal official charged with ESA consultation. The Secretary has delegated her duty to the U.S. Fish and Wildlife Service.

16.     Defendant FWS is a federal agency within the Department of the Interior.  Under the ESA, FWS is responsible for consulting with federal agencies to ensure that agency actions

1   do not jeopardize the survival and recovery of the Alameda whipsnake and Delta smelt or

2   adversely affect their critical habitats. 16 U.S.C. § 1536(a)(2).

3       17.   Defendant DAN ASHE is the Director of FWS.  He is sued in his official capacity

4   as FWS Director.

5                              **LEGAL BACKGROUND**

6       18.   The ESA declares that endangered and threatened species are of "esthetic,

7   ecological, educational, historical, recreational and scientific value to the Nation and its people."

8   16 U.S.C. § 1531(a)(3).  Accordingly, the ESA establishes the "means whereby the ecosystems

9   upon which endangered species and threatened species depend may be conserved" and "a

10  program for the conservation of such endangered species and threatened species …." *Id*. §

11  1531(b); *see id.* §§ 1531-1544.

12      19.   The Secretaries of Commerce and Interior are charged with administering and

13  enforcing the ESA, but they have delegated this responsibility to the National Marine Fisheries

14  Service ("NMFS") and FWS, respectively. 50 C.F.R. § 402.01(b).

15      20.   Section 2(c) of the ESA provides that it is "the policy of Congress that all Federal

16  departments and agencies shall seek to conserve endangered species and threatened species and

17  shall utilize their authorities in furtherance of the purposes of this [Act]." 16 U.S.C. § 1531(c)(1).

18  The ESA defines "conservation" to mean "the use of all methods and procedures which are

19  necessary to bring any endangered species or threatened species to the point at which the

20  measures provided pursuant to this [Act] are no longer necessary." *Id.* § 1532(3).

21      21.   To fulfill the substantive purposes of the ESA, federal agencies are required under

22  section 7(a)(2) to engage in consultation with FWS (and/or NMFS) before authorizing, funding,

23  or engaging in any "action" that could "jeopardize the continued existence" of any listed species

24  or "result in the destruction or adverse modification of habitat of such species …  determined …

25  to be critical." *Id.* § 1536(a)(2).  Under the regulations jointly adopted by FWS and NMFS to

26  govern Section 7 consultations, EPA's ongoing oversight of pesticides under the Federal

27  Insecticide, Fungicide, and Rodenticide Act ("FIFRA") constitutes agency "action" subject to

28

1    ESA section 7(a)(2). 50 C.F.R. §§ 402.02, 402.03; *see also Wash. Toxics Coal. v. Envtl. Prot.*

2    *Agency*, 413 F.3d 1024, 1033 (9th Cir. 2005).

3        22.    A federal agency is relieved of the obligation to consult only if its action will have

4    "no effect" on any listed species or designated critical habitat. 50 C.F.R. § 402.14(a)-(b).  If an

5    agency determines that its action "may affect" but is "not likely to adversely affect" a listed

6    species or its critical habitat, the regulations permit "informal consultation," during which FWS

7    must concur in writing with the agency's determination. *Id.* § 402.13(a).  If the agency

8    determines that its action is "likely to adversely affect" a listed species or critical habitat, or if

9    FWS does not concur with the agency's "not likely to adversely affect" determination, the

10   agency must engage in "formal consultation," as outlined in 50 C.F.R. § 402.14 ("Formal

11   Consultation"). *Id.* § 402.14; *see also id.* § 402.02. Through consultation, FWS details how the

12   agency action affects the listed species and their habitats and, if necessary, suggests reasonable

13   and prudent alternatives to protect the species. 16 U.S.C. § 1536(b)(3).

14       23.    The ESA requires that consultation occur at the earliest possible time and be

15   conducted according to a strict timeline in order to ensure that the agency action is not causing

16   jeopardy to listed species and their critical habitat, or otherwise harming the species. *See* 16

17   U.S.C. § 1536(b)(1)(A); 50 C.F.R. §§ 402.14(e), 402.46(c)(1).  To that end, FWS and EPA are

18   required to conclude consultations within 90 days. 16 U.S.C. § 1536(b)(1)(A); 50 C.F.R. §§

19   402.14(e), 402.46(c)(1).

## FACTUAL BACKGROUND

20

21   **I.     Pesticides Impact the Delta Smelt and Alameda Whipsnake**

22   **Delta Smelt**

23       24.    The Delta smelt (*Hypomesus transpacificus*) is a tiny fish found only in

24   California. It feeds on small, planktonic crustaceans, insect larvae, and copepods.

25       25.    This once-abundant species' population has crashed due to unsustainable water

26   diversions and water transfers in the Bay Delta; ever increasing amounts of pesticides and other

27   toxic pollutants; and the spread of nonnative species that thrive in the degraded Delta habitat.

28

1  Scientists have warned that the Delta smelt could go extinct within 20 years, and in 2013, the

2  FWS recommended uplisting the Delta smelt from "threatened" to an "endangered" status.

3       26.     The San Francisco Bay Delta has become polluted with often-lethal

4  concentrations of herbicides and pesticides discharged and transported from California's Central

5  Valley into the fish's estuary home. Toxic pulses of pesticides have been documented in the

6  Delta during critical stages in fish development, and pesticides have been implicated in the

7  recent collapse of the Delta smelt population.  High levels of pesticides and other pollutants harm

8  the Delta smelt both directly and indirectly by harming its invertebrate prey.

9  **Alameda Whipsnake**

10      27.     The Alameda whipsnake (*Masticophis lateralis euryxanthus*) is a slender, semi-

11  arboreal, diurnal snake with a broad head, large eyes, and slender neck.  The whipsnake feeds

12  primarily on lizards, and also on frogs, snakes, small birds, small mammals, and insects.  It is

13  found in the eastern San Francisco Bay area in areas of chaparral or coastal scrub vegetation that

14  is interspersed with other native habitat types including annual grasslands, mixed evergreen

15  forests, oak savannahs, oak woodlands, and riparian areas.

16      28.     Rodenticides, herbicides, and other pesticides are used in and around designated

17  critical habitat for the whipsnake and threaten the species both directly and indirectly — through

18  prey reduction and habitat alteration.  The 1994 proposed listing of the Alameda whipsnake

19  identified pesticide exposure as a threat to the species, stating that pesticides have the potential to

20  harm this species because "species in the food chain of the snake would be impacted." 59 Fed.

21  Reg. 5377, 5380 (Feb. 4, 1994).  The draft recovery plan for the Alameda whipsnake includes

22  reducing pesticide exposure through outreach and education to the public and pesticide

23  applicators in particular as necessary recovery actions for the Alameda whipsnake.

24  **II.     Atrazine, Alachlor, and 2,4-D Impact Endangered Wildlife**

25  **Atrazine**

26      29.     Each year, approximately 60-80 million pounds of atrazine are used across the

27  United States.  As a result, atrazine is one of the most commonly detected pesticides in drinking

28  water, surface waters, and ground water across the nation. Approximately 75 percent of stream

1    water and about 40 percent of all groundwater samples from agricultural areas tested in an

2    extensive U.S. Geological Survey study contained atrazine and its primary degradate,

3    deethylatrazine.

4        30.    Such widespread environmental contamination is particularly alarming because

5    exposure to atrazine at levels as low as 0.1 parts per billion (ppb) have been shown to negatively

6    impact the development of sexual organs in amphibians.  Research demonstrated that exposure to

7    21 ppb of atrazine during metamorphosis for as little as two days can impair development of the

8    reproductive organs in male and female frogs.   Atrazine has also been shown to negatively

9    impact fish, reptiles, mammals, and birds.

10   **Alachlor**

11       31.    Alachlor is a less-commonly used herbicide than atrazine, but even so,

12   approximately 4 million pounds were applied across the United States in 2011. The use of

13   alachlor has declined significantly since the early 1990s, when approximately 20-25 percent of

14   corn cropland was sprayed with this pesticide.  Alachlor and its degradates are leachable from

15   agricultural soils and have been detected in watersheds of agricultural land, including ground and

16   surface waters.

17       32.    EPA restricted the use of alachlor in 1998 due to significant environmental and

18   human health concerns.  EPA currently classifies alachlor as a "likely" human carcinogen at high

19   doses and a "not likely" carcinogen at low doses.   Alachlor is highly toxic to freshwater fish and

20   slightly toxic to birds and some invertebrates.

21   **2,4-D**

22       33.    In 2014, approximately 45 million pounds of 2,4-D were applied, making 2,4-D

23   one of the most commonly used herbicides in the United States after glyphosate and atrazine.

24       34.    The 2005 reregistration eligibility decision for 2,4-D acknowledges the significant

25   harms that 2,4-D can have on endangered species like the Delta smelt, concluding that the use of

26   2,4-D "exceed the acute risk level of concern (LOC) for freshwater fish and invertebrates and

27   chronic risk LOC for freshwater and estuarine fish and freshwater invertebrates."  In addition,

28   NMFS concluded that the use of 2,4-D jeopardized the continued existence of 28 Evolutionarily

Significant Units of endangered salmon and steelhead in the northwest United States and adversely modified the critical habitat of six of those species. EPA's risk assessment is deficient in that it does not mention reptiles like the Alameda whipsnake.

**III.     FWS Fails to Complete Required Section 7 Consultation**

35.     In 2007, the Center sued EPA for failing to consult with FWS regarding the pesticide impacts on 11 San Francisco Bay Area species with respect to 77 pesticide active ingredients. In 2010, the Center and EPA reached a settlement and the Federal Court entered a Stipulated Injunction requiring the EPA complete effects determinations for these 11 species and imposing spray-limitation buffers around defined habitats. In compliance with these settlements, EPA began to analyze the impacts of different pesticides on the listed species.

36.     In February 2009, EPA requested formal consultation from FWS for atrazine, alachlor, and 2,4-D after determining that these pesticide were likely to adversely affect the Delta smelt and the Alameda whipsnake (as well the California red-legged frog, which is not covered by this Complaint). But FWS refused to complete formal consultation.

37.     Nearly six years have passed since EPA requested the first of its consultations.  In that time, FWS has not completed any consultation or recommended any measures necessary to ensure that atrazine, alachlor, and 2,4-D will not harm the Delta smelt or the Alameda whipsnake, or adversely modify their critical habitat.  The process has been stalled for years despite the mandatory deadlines in the ESA and its applicable regulations.  The agency's delay in completing the consultations and prescribing mitigation allows toxic pesticides to continue to harm wildlife species, in violation of law.

**FIRST CAUSE OF ACTION**

**FWS Has Failed to Complete Consultation within the ESA's Mandatory Timelines**

38.     All allegations set forth above in this Complaint are incorporated herein by reference.

39.     Under section 7(a)(2) of the ESA, EPA has a duty to ensure through consultation with FWS that its actions are not likely to "jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical]

Complaint for Declaratory and Injunctive Relief                                                                9

1    habitat …. " 16 U.S.C. § 1536(a)(2).  Formal consultation is required for any pesticide that EPA

2    determines "may affect" a listed species or critical habitat. *See* 50 C.F.R. § 402.14(a).

3        40.     In 2009, EPA requested formal consultation from FWS for atrazine, alachlor, and

4    2,4-D after determining that these pesticides were likely to adversely affect the Alameda

5    whipsnake and Delta smelt.

6        41.     FWS did not consult with EPA and has not issued biological opinions to protect

7    the Alameda whipsnake or Delta smelt from atrazine, alachlor, or 2,4-D.

8        42.     Under the ESA and its implementing regulations, FWS must complete the

9    consultation process within 90 days after consultation has been initiated by the action agency. 16

10   U.S.C. § 1536(b)(1); 50 C.F.R. §§ 402.14(e), 402.46(c)(1).

11       43.     By failing to complete consultations within the ESA's deadlines, FWS is in

12   violation of the ESA.  16 U.S.C. § 1536; 50 C.F.R. §§ 402.14(e), 402.46(c)(1).

13                       **SECOND CAUSE OF ACTION**

14   **By Unreasonably Delaying Completion of Formal Consultation, FWS is Violating Section**

15                           **706(1) of the APA**

16       44.     All allegations set forth above in this Complaint are incorporated herein by

17   reference.

18       45.     The APA dictates that agencies must conclude a matter presented to it "within a

19   reasonable time."  5 U.S.C. § 555(b).  Accordingly, APA section 706(1) authorizes reviewing

20   courts to "compel agency action unlawfully withheld or unreasonably delayed."  *Id*. § 706(1).

21       46.     In February of 2009, EPA requested consultations with FWS for atrazine,

22   alachlor, and 2,4-D after determining that these pesticides were likely to adversely affect the

23   Alameda whipsnake and Delta smelt.  Despite the passage of approximately six years since EPA

24   requested these consultations, FWS has not completed consultation for any of these pesticides.

25   FWS's delay in completing the consultations constitutes unlawful and unreasonable delay under

26   APA section 706(1).

27                          **PRAYER FOR RELIEF**

28       WHEREFORE, the Center prays that the Court:

Complaint for Declaratory and Injunctive Relief                              10

1        (1)     Declare that FWS is in violation of section 7 of the ESA, 16 U.S.C. § 1536, and

2   its implementing regulations, 50 C.F.R. §§ 402.14(e), 402.46(c)(1), by failing to timely complete

3   the consultations for atrazine, alachlor, and 2,4-D, which EPA determined were likely to

4   adversely affect the Alameda whipsnake and Delta smelt;

5        (2)     Declare that FWS is in violation of Section 706(1) of the APA by failing to

6   complete the consultations within a reasonable time;

7        (3)     Order FWS to complete the required consultations;

8        (4)     Order restrictions on, or prohibit the use of, atrazine, alachlor, and 2,4-D where

9   they may affect the Alameda whipsnake and Delta smelt or their habitats until the consultation

10  processes have been completed;

11       (5)     Award Plaintiff its attorneys' fees and costs in this action pursuant to 16 U.S.C. §

12  1540(g)(4) and 28 U.S.C. § 2412; and

13       (6)     Grant such other and further relief as the Court deems just and proper.

14

15

16       /s/ Justin Augustine

17       _____

18       Justin Augustine
         Center for Biological Diversity
19       351 California Street, Suite 600
         San Francisco, CA 94104
20       Tel: (415) 436-9682
         Fax: (415) 436-9683
21       jaugustine@biologicaldiversity.org

22

23

24

25

26

27

28