UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF INTERIOR, et al.,<br><br>  Defendants. | Case No. 15-cv-00658-JCS<br><br>**ORDER GRANTING MOTION OF CROPLIFE AMERICA TO INTERVENE AS DEFENDANT**<br><br>Re: Dkt. No. 21 |

## I.   INTRODUCTION

This is an environmental regulation case brought by the Center for Biological Diversity against the U.S. Department of the Interior ("DOI"), the U.S. Fish and Wildlife Service ("FWS"), and agency officials (collectively, "Federal Defendants"). Plaintiff alleges that Federal Defendants violated the Endangered Species Act ("ESA"), 16 U.S.C §§ 1531 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.SC. §§ 500 *et seq.*, by failing to complete consultations with the U.S. Environmental Protection Agency ("EPA") regarding the effects of three EPA-registered pesticides on two species in the California Bay Delta. Plaintiff seeks injunctive and declaratory relief, including an order directing Federal Defendants to complete consultations with EPA regarding the challenged pesticides and an order restricting the use of the challenged pesticides until such consultations are complete. CropLife America ("CropLife") now brings a Motion to Intervene as Defendant ("Motion to Intervene") in which it seeks to represent the interests of pesticide producers in this action. *See* dkt. no. 21. The Court finds the matter suitable for resolution without oral argument and **vacates the hearing on the Motion to Intervene scheduled for July 24, 2015.** *See* Civ. L.R. 7-1(b). **The hearing on the Motion for Judgment on the Pleadings and the case management conference set for the same day shall**

**remain on calendar.** For the reasons set forth below, CropLife's Motion to Intervene is GRANTED.[1]

## II. BACKGROUND

### A. Background Law

#### 1. Pesticide Registration by EPA

The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 135 *et seq.*, provides that all pesticides must be registered by EPA prior to being sold or distributed in the United States. *See* 7 U.S.C. § 136a. To register a pesticide with EPA, an applicant must specify the pesticide's intended use and provide scientific research results demonstrating the pesticide's environmental safety. *See* 7 U.S.C. § 136a(c). EPA will register a pesticide upon the determination that the pesticide will not cause "unreasonable adverse effects on the environment," when the pesticide is "perform[ing] its intended function" and is "used in accordance with widespread and commonly recognized practice." *See id.* After registering a pesticide, EPA must periodically review the pesticide's registration to confirm the pesticide's continued satisfaction of EPA's environmental standards. *See* 7 U.S.C. § 136a(g). Upon review, a pesticide may be re-registered or removed from the list of registered pesticides. *See* 7 U.S.C. § 136a-1.

#### 2. Interagency Consultation with FWS

Section 7(a)(2) of the ESA requires all federal agencies to consult with FWS to ensure that the agencies' considered actions are "not likely to jeopardize the continued existence of any [FWS-listed threatened or endangered] species or result in the destruction or adverse modification of [any FWS-designated critical] habitat of such species." *See* 16 U.S.C. § 1536(a)(2). If a federal agency determines that any of its considered actions "may affect" an FWS-listed species or critical habitat, "formal consultation" with FWS leading to an FWS-issued "biological opinion" is required, unless the federal agency, after an "informal consultation" with FWS, determines that the considered action is "not likely to adversely affect" the listed species or critical habitat, and FWS concurs. *See* 50 C.F.R. § 402.14(a)-(b). A federal agency's consultation with FWS must be

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

concluded within 90 days of initiation or "within such time as is mutually agreeable" to the agency and FWS. *See* 16 U.S.C. § 1536(b)(1)(A). The EPA may be required to reinitiate consultations under some circumstances, such as when new information reveals that an action may affect a listed species or critical habitat in a manner not previously considered. *See* 50 C.F.R. § 402.16.

EPA registration and re-registration of pesticides under FIFRA constitutes federal agency action subject to the interagency consultation requirements of the ESA. *Washington Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1032 (9th Cir. 2005) ("even though EPA registers pesticides under FIFRA, it must also comply with the ESA when threatened or endangered species are affected"). On the other hand, in the absence of some affirmative act or authorization, the mere fact that EPA has continuing regulatory authority and discretionary control with respect to pesticide registrations is not sufficient to trigger a duty to initiate consultation under Section 7. *See* Order Granting Motion to Intervene; Granting Motions to Dismiss and Dismissing Complaint with Leave to Amend, No. 3:11-cv-00293-JCS at 14–15 (N.D. Cal. Apr. 22, 2013) (dkt. no. 157) (citing *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1021 (9th Cir. 2012) (*en banc*)).

### 3. Withheld or Delayed Agency Action under the APA

The APA requires federal agencies to conclude matters presented to them "[w]ith due regard to the parties or their representatives and within a reasonable time." *See* 5 U.S.C. § 555(b). Section 706(1) of the APA authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1).

### B. The Federal Defendants

DOI is the federal agency charged with interagency consultations under the ESA. *See* 16 U.S.C. § 1532(15). However, DOI has delegated the responsibility to carry out ESA interagency consultations to FWS. *See* 16 U.S.C. § 1536(a)(2); *see also* 50 C.F.R. § 402.01(b). Sally Jewell is the Secretary of the Interior and is being sued in her official capacity.

FWS is a federal agency within DOI and is responsible for ESA interagency consultations regarding the species at issue in this case. *See* 50 C.F.R. § 17.11; *see also* 50 C.F.R. § 402.01(b). Dan Ashe is the Director of FWS and is being sued in his official capacity.

3

### C. The Plaintiff and its Claims

The Center for Biological Diversity is a non-profit environmental organization whose members derive benefits from the species at issue in this case and are concerned with the conservation of these species. *See* Compl. ¶ 10 (dkt. 1). Plaintiff alleges that Federal Defendants violated Section 7(a)(2) of the ESA and Section 706(1) of the APA by failing to complete consultations requested by EPA in February 2009 regarding the effects of three EPA-registered pesticides—Atrazine, Alachlor, and 2,4-D—on two FWS-listed species in the California Bay Delta—the Delta Smelt and the Alameda Whipsnake. Compl. ¶ 1. Plaintiff seeks injunctive and declaratory relief, including an order compelling FWS to complete consultations with EPA regarding these pesticides and an order restricting the use of these pesticides until such consultations are complete. Compl. ¶ 5.

### D. The Proposed Intervenor-Defendant

CropLife is a non-profit trade association whose 25 member companies develop and sell pesticide products for use in the United States. Motion to Intervene Ex. A (Lattimore Decl.) ¶ 3. Collectively, CropLife's member companies produce most of the pesticides registered by EPA under FIFRA, including the three challenged pesticides in this case. Lattimore Decl. ¶ 3. According to CropLife, its member companies typically conduct more than 120 tests and spend about $256 million to bring a new pesticide active ingredient to market, including product development as well as EPA-required testing. Lattimore Decl. ¶ 4. Additionally, after FIFRA registrations are issued by EPA, CropLife's member companies "make substantial capital investments in production facilities and contracts in reliance on the registration of and continued marketability of their products." *See id*.

### E. Procedural History

This case follows from Plaintiff's prior litigation challenging EPA's failure to initiate consultations with FWS regarding the effects of 75 EPA-registered pesticides on eleven species in the San Francisco Bay Area, including the three pesticides and two species at issue in this case. *See generally* Second Amended Complaint, No. 3:07-cv-02794-JCS (dkt. 103). In Plaintiff's prior litigation, as in the present case, CropLife moved to intervene as a defendant. *See* Notice of

4

Motion and Motion for Leave to Intervene as Defendant; Memorandum of Points and Authorities in Support Thereof, No. 3:07-cv-02794-JCS (dkt. 19). The Court granted that motion in part and denied it in part, allowing permissive intervention only with respect to the remedies phase of the litigation. *See* Order Granting in Part, Denying in Part Motions to Intervene and Case Management Conference and Pretrial Order, No. 3:07-cv-02794-JCS (N.D. Cal. Mar. 19, 2008) (dkt. no. 46).

Ultimately, Plaintiff's prior litigation resulted in a settlement agreement. *See* Order Approving Stipulated Injunction and Order, No. 3:07-cv-02794-JCS (N.D. Cal. May 17, 2010) (dkt. no. 121). In that settlement, EPA agreed to make effects determinations and initiate consultations with FWS as necessary regarding the 75 challenged pesticides in the case, with EPA's authorizations of those pesticides restricted in the interim. *See* Stipulated Injunction and Order, 3:07-cv-02794-JCS (dkt. no. 104-1). In return, Plaintiff agreed "not to bring, assist any other party in bringing, or join EPA or any other party in any court proceeding that concerns an alleged violation of Section 7 of the ESA" regarding the 75 pesticides and eleven species in certain Bay Area counties until after EPA completed its effects determinations and necessary consultations with FWS. *See id*.

### F. The Present Motion

CropLife now moves to intervene as a defendant in order to represent the interests of pesticide producers in this case. *See generally* Motion to Intervene. CropLife argues that it is entitled to intervene as a matter of right under Rule 24(a)(2) because its motion is timely, its member companies have legally protectable interests relating to this case, those interests may be impaired by the disposition of this case, and those interests may not be adequately represented by existing parties. *See id*. at 5–9. CropLife argues in the alternative that it should be allowed to intervene permissively under Rule 24(b)(1) because its claims share common questions of law and fact with the main action, its motion is timely, and the Court has independent grounds for jurisdiction over its claims. *See id*. at 11–12.

## III. ANALYSIS

### A. Legal Standard

To intervene as a matter of right under Rule 24(a)(2), a party must demonstrate that four elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). The Ninth Circuit generally "construe[s] Rule 24(a) liberally in favor of potential intervenors," and "review is guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (citations and internal quotation marks omitted). Even so, "[t]he party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Alternatively, to intervene permissively under Rule 24(b)(1), a party "must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citing *Nw. Forest Resource Council*, 82 F.3d at 839). If the party seeking to intervene satisfies those elements, the district court "is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention," including "the nature and extent of the intervenor's interest." *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The district court has broad discretion to grant or deny the motion, but "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412; *see also* Fed. R. Civ. P. 24(b)(3).

### B. CropLife May Intervene Permissively Pursuant to Rule 24(b)(1)

CropLife satisfies the threshold requirements for permissive intervention under Rule

24(b)(1) and its intervention is timely and would not prejudice existing parties. Therefore, considering CropLife's substantial interest in the disposition of this case, the Court will grant CropLife permission to intervene as a defendant.

### 1. CropLife's Defenses Share Questions of Law and Fact in Common with the Main Action

CropLife's defenses to Plaintiff's claims share questions of law and fact in common with the main action, including whether Plaintiff lacks standing to bring this case and whether Plaintiff's claims are barred by the settlement agreement in Plaintiff's prior litigation. *See generally* Memorandum in Support of Federal Defendants' Motion for Judgment on the Pleadings by Proposed Intervenor-Defendant CropLife America (dkt. 44).

### 2. CropLife's Motion to Intervene is Timely

Courts have broad discretion to consider a motion to intervene timely or untimely, but consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). Based on its consideration of these factors, the Court finds that CropLife's Motion to Intervene is timely.

CropLife filed the present Motion on May 6, 2015, less than three months after Plaintiff filed its Complaint and before Federal Defendants filed their Answer. *See* Compl.; Federal Defendants' Answer (dkt. 25). The initial Case Management Conference ("CMC") was held after CropLife filed the present Motion, and CropLife participated in the CMC via telephone. *See* Order Granting re Letter Filed by Proposed Intervenor CropLife America for Kirsten Nathanson to Listen to 5/15 Proceedings by Phone (dkt. 28). Therefore, CropLife filed the present motion at an early stage of the proceeding and without delay. Additionally, CropLife's intervention at this time would not prejudice existing parties, none of whom objects to CropLife's intervention in the case, let alone the timing of its intervention.

### 3. The Court has an Independent Basis for Jurisdiction Over CropLife's Claims

The Court has independent subject matter jurisdiction over CropLife's claims because they are defenses to Plaintiff's claims, which arise under the ESA and the APA, both federal laws. *See* 28 U.S.C. § 1331. Therefore, the district court's jurisdiction is grounded in the federal questions raised by Plaintiff. *See Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir. 1997) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concerns drop away").

### 4. The Court is Justified in Exercising its Discretion to Permit Intervention

Having found that CropLife satisfies the threshold requirements for permissive intervention, the Court is "entitled to consider other factors" to determine whether CropLife should be permitted to intervene in this action, including "the nature and extent of the intervenor's interest." *See Spangler*, 552 F.2d at 1329. Plaintiff seeks to compel FWS to complete consultations with EPA regarding pesticides that have been registered by CropLife's member companies, and to restrict the use of the challenged pesticides in the meantime. *See* Compl. ¶ 5. According to CropLife, its member companies conduct more than 120 tests and spend about $256 million to develop the typical pesticide active ingredient and secure its FIFRA registration, then make "substantial" investments in reliance on the pesticide's FIFRA registration. Lattimore Decl. ¶ 4. Although CropLife has not provided evidence establishing the value of the specific FIFRA registrations for the three challenged pesticides in this case, the Court finds that the evidence CropLife has provided as to typical expenses and investments is sufficient to show that CropLife has a substantial interest in outcome of this action. Therefore, the Court exercises its discretion to grant CropLife permission to intervene as a defendant.

### C. The Court Declines to Reach CropLife's 24(a)(2) Arguments

In light of the Court's decision to allow permissive intervention under Rule 24(b)(1), the Court declines to reach CropLife's Rule 24(a)(2) arguments.

### D. CropLife's Participation May Be Limited to Promote Efficiency and Fairness

Plaintiff requests that CropLife be required to coordinate with Federal Defendants to avoid duplicative motions and briefing. *See* Plaintiff's Response to CropLife America's Motion to

8

Intervene (dkt. 35).  Courts can limit intervening parties' participation as appropriate to protect "efficient conduct of the proceedings" and "the original parties' rights."  *See* Advisory Committee Notes to 1966 Amendments to Fed. R. Civ. P. 24; Fed. R. Civ. P. 24(b)(3).  The Court need not reach this question at this time, but rather will address any appropriate limitations on CropLife's participation in the ordinary course of case management.

## IV. CONCLUSION

For the foregoing reasons, CropLife's Motion to Intervene is GRANTED.

**IT IS SO ORDERED.**

Dated: June 24, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge