# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL
DIVERSITY,

    Plaintiff,

    v.

U.S. DEPARTMENT OF THE
INTERIOR; SALLY JEWELL, in her
official capacity as Secretary of the
Interior; U.S. FISH AND WILDLIFE
SERVICE; DAN ASHE, Director of the
U.S. Fish and Wildlife Service,

    Defendants,

CROPLIFE AMERICA,

    Defendant-Intervenor.

CASE NO. 3:15-cv-658-JCS

**STIPULATED SETTLEMENT AND
[PROPOSED] ORDER**

Plaintiff Center for Biological Diversity ("the Center"); Sally Jewell, in her official capacity as the Secretary of the Interior, the U.S. Fish and Wildlife Service (the "FWS"), and Dan Ashe, in his official capacity as Director of the Fish and Wildlife Service ("Federal Defendants") (collectively, "the Parties") by and through the undersigned counsel, state as follows:

WHEREAS, under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), the U.S. Environmental Protection Agency ("EPA") is responsible for registering pesticides and ensuring that pesticides do not cause unreasonable adverse effects on the environment, which includes species listed as threatened or endangered ("listed species") under the Federal Endangered Species Act ("ESA");

1

WHEREAS, pursuant to Section 7 of the ESA, EPA and all federal agencies must, in consultation with and with the assistance of FWS and NMFS, insure that any action authorized, funded, or carried out by such agency is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of their critical habitat;

WHEREAS, over the years, EPA, FWS, and NMFS have used different risk assessment approaches to identify the potential effects of pesticides on threatened and endangered species and were unable to reach a consensus on an approach for assessing the risks to listed species;

WHEREAS, these different approaches to risk assessment have impacted the ability of EPA, FWS and NMFS to complete consultation under the ESA;

WHEREAS, in order to resolve these differences, EPA, FWS, NMFS, and the United States Department of Agriculture ("USDA") asked the National Academy of Sciences ("NAS") to evaluate the differing risk assessment approaches used by these agencies to identify the potential effects of pesticides on threatened and endangered species;

WHEREAS, the NAS responded to that request on April 30, 2013, by issuing a report entitled "Assessing Risks to Endangered and Threatened Species from Pesticides" (the "NAS report");

WHEREAS, the NAS report suggests, *inter alia*, that EPA, FWS, and NMFS take a common approach to assessing the potential effects of pesticides on listed species to facilitate coordination among federal agencies;

WHEREAS, EPA, FWS, and NMFS are now working in close cooperation to evaluate and implement recommendations made by the NAS report;

WHEREAS, FWS, EPA and NMFS are now working collaboratively on the ESA § 7 consultation process for the registration review of certain pesticides under section 3(g) of FIFRA with recommendations provided in the NAS report;

WHEREAS, based on the findings in the NAS report, the work done so far by the agencies to implement recommendations in that report, and the need to align the consultation process with EPA's registration review of pesticides, the Parties agree that when consultation is required, it would be more efficient for EPA and FWS to consult on the potential effects of pesticides on listed species nationwide; the Parties further agree that the agencies still face significant challenges in implementing recommendations of the NAS report and completing such nationwide consultations; accordingly, the Parties acknowledge that the Agencies intend to proceed with nationwide ESA evaluations in a phased, iterative process, taking into account input received and lessons learned from initial efforts to implement NAS recommendations, and maintaining flexibility to pursue processes or methodologies not part of such initial efforts;

WHEREAS, the Center filed a complaint on October 19, 2011 in *Center for Biological Diversity v. U.S. Fish and Wildlife Service et al.*, No. 3:11-cv-5108-JSW (N.D. Cal.) ("CRLF II"), alleging that the FWS and EPA violated Section 7 of the ESA, the ESA's implementing regulations, and the Administrative Procedure Act ("APA"), with regard to the alleged failure to complete consultation as to the effects of 64 pesticide ingredients for which EPA determined in 2009 were likely to affect the California red-legged frog (*Rana draytonii*);

WHEREAS, on November 4, 2013, the Center, FWS and EPA entered into a settlement agreement in CRLF II requiring completion of ESA consultations on the effects of seven (7) chemicals on the California red-legged frog by November 4, 2015 (CRLF II, Dkt. 76). ("November 4, 2013 Agreement");

WHEREAS, on July 28, 2014, the Center, FWS and EPA entered into a stipulation amending the CRLF II November 4, 2013 Agreement to provide that if FWS completes nationwide consultation on five chemicals (carbaryl, chlorpyrifos, diazinon, malathion, and methomyl) by December 31, 2018, FWS shall be deemed to have discharged its obligations under the terms of the original settlement in full (CRLF II, Dkt. 87) ("July 28, 2014 Agreement");

WHEREAS, EPA and FWS are working to complete such nationwide consultations on carbaryl, chlorpyrifos, diazinon, malathion, and methomyl;

WHEREAS, EPA and FWS currently expect to complete nationwide ESA consultations for three of the five pesticides listed above (chlorpyrifos, diazinon, and malathion) by December 31, 2017, and for the remaining two pesticides (carbaryl and methomyl) by December 31, 2018;

WHEREAS, the Center filed a separate complaint on February 12, 2015 in the case at bar, alleging that the FWS has violated Section 7 of the ESA and the APA, with regard to the alleged failure to complete consultation and the effects of atrazine and alachlor on the Delta smelt (*Hypomesus transpacificus*) ("smelt") and 2, 4-D upon the Alameda whipsnake (*Masticophis lateralis euryxanthus*) ("whipsnake") (Dkt. 1);

WHEREAS, based on the findings in the NAS report and the work done so far by the agencies to address recommendations in that report, the Parties now agree that it would be more efficient for FWS to consult on the potential effects that one pesticide at issue in this case (atrazine) as well as three other priority pesticides not at issue in this case (simazine, propazine, and glyphosate) have on listed species on a nationwide basis (if EPA initiates nationwide consultation with FWS on atrazine, simazine, propazine, and glyphosate), instead of completing

consultation on the effects of atrazine and alachlor on only the smelt and 2,4-D on only the whipsnake;

WHEREAS, EPA expects to complete a nationwide evaluation of the effects of four pesticides–atrazine, simazine, propazine and glyphosate–on listed species in connection with registration review under FIFRA and initiate any necessary nationwide ESA consultations for these four pesticides by June 30, 2020 (*Center for Biological Diversity v. Environmental Protection Agency*, No. 3:07-cv-02794-JCS (N.D. Cal.) (Dkt. 154 at 3);

WHEREAS, if EPA initiates nationwide consultation with FWS on atrazine, simazine, propazine, and/or glyphosate, EPA and FWS currently expect to complete such nationwide ESA consultations by December 30, 2022;

WHEREAS, these four pesticides, together with the five pesticides addressed in the CRLF II July 28, 2014 Agreement, constitute a substantial portion of pesticide use in the U.S. by weight annually;

WHEREAS, EPA, FWS, and NMFS are exploring the feasibility of a comprehensive pesticide ESA consultation workplan addressing the registration and registration review of pesticide ingredients under FIFRA;

WHEREAS, the Parties enter into the instant Stipulated Settlement so that FWS will have an opportunity to attempt to complete the potential nationwide consultations described above, while acknowledging that FWS may still be required to complete consultations on the effects of atrazine and alachlor on the smelt and 2,4-D on the whipsnake if it is not able to complete the potential nationwide consultations (although any applicable deadline for such whipsnake and smelt consultation would be determined by the Parties after the mechanism described in paragraph 4, *infra*, is triggered);

WHEREAS, the Center and the Federal Defendants, through their authorized representatives, have reached agreement on the terms of a settlement, which is captured in this Stipulated Settlement, that they consider to be a just, fair, adequate, and equitable resolution of the issues in this case;

WHEREAS, the parties agree that this Stipulated Settlement is in the public interest and is an appropriate way to resolve the remaining disputed issues;

WHEREAS Defendant-Intervenor CropLife America takes no position on this proposed Stipulated Settlement;

NOW, THEREFORE, THE PARTIES STIPULATE AS FOLLOWS:

1.      As to the FWS's completion of consultation and delivery to EPA of a final biological opinion on the effects of atrazine and alachlor on the smelt and 2-4,D on the whipsnake, any applicable deadline is hereby suspended to allow the Federal agencies to engage in the potential nationwide consultations described in the above "whereas" clauses.

2.      No provision of this Stipulation requires (or shall be construed to require) FWS to conduct the nationwide consultations described above in the "whereas" clauses, and no provision of this Stipulation requires (or shall be construed to require) FWS to complete any such nationwide consultations on the schedule set out in the above "whereas" clauses.

3.      While it is not obligated to do so, if EPA initiates and FWS completes nationwide consultation on atrazine, simazine, propazine, and glyphosate on the schedule set out above in the "whereas" clauses, then FWS shall be deemed to have discharged its obligations to complete consultation on the effects of atrazine and alachlor on the smelt and 2,4-D on the whipsnake in full.

4.      Alternatively, if

(a) FWS does not complete an EPA-initiated nationwide consultation on atrazine, simazine, propazine and glyphosate on the schedule set out above in the "whereas" clauses;

(b) FWS concludes (based on further review of these issues) that nationwide consultations are no longer appropriate or required; or,

(c)  FWS does not complete the interim benchmarks on the estimated schedule described below in Paragraph 5, then:

(1) at the request of either the Center or the Federal Defendants, the Parties shall meet and confer at the earliest available opportunity to discuss whether it is appropriate for FWS to complete the consultations on the effects of atrazine and alachlor on the smelt and 2,4-D on whipsnake described in Paragraph 1, *supra*, and, if so, to discuss an appropriate revised schedule for those consultations; and,

(2) if the Parties are unable to reach agreement on that revised schedule within thirty (30) days of any such meeting and conference, either party may petition the Court to resolve the dispute and set a schedule for the remaining consultations on the effects of atrazine and alachlor on the smelt and 2,4-D on the whipsnake described in Paragraph 1, *supra*.

5.	Within 30 days of the Court's approval of this Stipulated Settlement, FWS shall provide the Center (and Intervenor-Defendant) with an estimated schedule, including interim benchmarks, for completing the potential nationwide consultations described above in the "whereas" clauses. That schedule will include estimated dates for FWS's draft biological opinions and FWS's final biological opinions for each of these pesticides, where applicable. The Parties recognize that this schedule will be a good faith estimate as of the date that it is provided, but that the schedule may be subject to change (based on factors including, but not limited to, variations in the estimated dates for data submission, the volume of public comments, and unanticipated legal obligations), and that, as stated above in Paragraph 3, this schedule will not be binding or enforceable by the Court.

7

1    6.    FWS shall provide the Center (and Intervenor-Defendant) with an update by

2    conference call every four (4) months describing the status of these consultations.

3    7.    Upon entry of this Stipulated Settlement, Plaintiff's complaint shall be dismissed

4    with prejudice.

5    8.    This Stipulation has no precedential value and shall not be used as evidence in

6    litigation or any other court proceeding (other than to enforce this Stipulated Settlement).

7    9.    Within 30 days of the Court's approval of this Stipulated Settlement, the FWS

8    shall post the following on its Pesticide Registrations and ESA Consultations webpage, which is

9    found at http://www.fws.gov/endangered/what-we-do/pesticide-consultation.html : (i) a

10   summary of the principal terms of this Stipulated Settlement, including the schedule discussed in

11   the "whereas" clauses; (ii) a hyperlink to the full text of the Stipulated Settlement; and (iii) a

12   hyperlink to the EPA's webpage covering the stipulated injunction entered in *Center for*

13   *Biological Diversity v. EPA*, 07-2794 (N.D. Cal., May 17, 2010) (Dkt. 121) ("Order Approving

14   Stipulated Injunction and Order"), which is found at: http://www.epa.gov/endangered-

15   species/original-2010-court-order-cbd-v-epa.

16   10.   The Parties reserve the right to seek to have this Court modify this Stipulated

17   Settlement because of the FWS's ongoing actions to comply with the ESA, to meet the

18   requirements of other federal agencies or departments, or to contend with other circumstances

19   not presently anticipated, including completion of FWS's, NMFS's, and EPA's comprehensive

20   ESA pesticide consultation workplan discussed above in the "whereas" clauses. The Court will

21   consider such future requests as it deems appropriate.

22   11.   In the event of a disagreement between the Parties concerning the interpretation or

23   performance of any aspect of this Stipulated Settlement, the dissatisfied Party shall provide

8

the other Party with written notice of the dispute and a request for negotiations. The Parties shall confer in order to attempt to resolve the dispute within 14 days after receipt of the notice, or such time thereafter as is mutually agreed upon. If the Parties are unable to resolve the dispute within 21 days after receipt of the notice, or such time thereafter as is mutually agreed upon, then any Party may petition the Court to resolve the dispute.

12.     The Federal Defendants agree that Plaintiff is entitled to reimbursement of reasonable attorneys' fees and costs. Federal Defendants and Plaintiff agree to attempt to resolve Plaintiff's claim for fees and costs for all claims in this action expeditiously, without the need for Court intervention. The Parties recognize that Federal Defendants have not waived any defense to and preserve their right to challenge the reasonableness of the amount of attorneys' fees and costs requested by Plaintiff in the event that Plaintiff and Federal Defendants are unable to resolve Plaintiff's claim for fees and costs. The Parties further recognize that Plaintiff reserves the right to seek additional fees and costs incurred arising from a need to enforce or defend against efforts to modify this Stipulated Settlement, to litigate a reasonable award of attorneys' fees and costs, or for any other unforeseen continuation of this action.

13.     If the Federal Defendants and Plaintiff cannot agree on the amount of such fees within 60 days of the Court approving this Stipulated Settlement, Plaintiff shall file a motion for attorneys' fees and costs with the Court in this matter. This 60 day period shall supersede the 14 day time period otherwise applicable pursuant to Federal Rules of Civil Procedure Section 54(d)(2)(B) and the court order approving the Stipulated Settlement will accordingly operate as an enlargement of time pursuant to Federal Rules of Civil Procedure Section 6(b)(1) for Plaintiffs to file a fee motion.

9

14.     It is the expectation and understanding of the Parties that if EPA cancels the remaining pesticide registrations containing any of the active ingredients listed in Paragraph 1, FWS shall not be required to complete consultation with regard to that active ingredient.

15.     It is furthermore the expectation and understanding of the Parties that if EPA cancels the remaining pesticide registrations containing any of the active ingredients listed in Paragraph 3, FWS shall be deemed to have discharged its consultation commitments for the purposes of Paragraph 3 with regard to that active ingredient.

16.     No provision of this Stipulated Settlement shall be interpreted as or constitute a commitment or requirement that the Federal Defendants take action in contravention of the ESA, the APA, or any other law or regulation, either substantive or procedural. Nothing in this Stipulated Settlement shall be construed to limit or modify the discretion accorded to the Federal Defendants by the ESA, the APA, or general principles of administrative law with respect to the procedures to be followed in conducting the ESA consultation described above, or as to the substance of any such determinations.

17.     Nothing in this Stipulated Settlement shall bar the Federal Defendants from acting on any matters covered herein in a time frame earlier than required by this Stipulated Settlement, or from taking additional actions not specified herein if the Federal Defendants determines such actions are appropriate under applicable law.

18.     Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Federal Defendants are obligated to pay any funds exceeding those available, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other appropriations law.

19.     The Parties agree that this Stipulated Settlement was negotiated in good faith and that entry of this Stipulated Settlement constitutes a settlement of claims that were vigorously contested, denied, and disputed by the Parties. By entering into this Stipulated Settlement, the Parties do not waive any claim or defense.

20.     The undersigned representatives of each Party certify that they are fully authorized by the Party (or Parties) they represent to agree to the terms and conditions of this Stipulated Settlement and do hereby agree to the terms herein.

21.     This Stipulated Settlement does not constitute an admission or evidence of any fact, wrongdoing, misconduct, or liability on the part of the United States, including without limitation, the Federal Defendants, their officers, or any other person affiliated with the FWS, or any interpretation of any applicable provision of law.

22.     Plaintiff's sole judicial remedy to address the merits of any final action that may ensue from FWS's performance of its obligations under this Stipulated Settlement is to file a separate lawsuit challenging such final action. The Federal Defendants reserve all defenses to any such suit. Nothing in this Stipulated Settlement alters or affects the standards for review of final agency action, or creates jurisdiction that otherwise would not exist to review agency action.

23.     Notwithstanding the dismissal of this action, the Parties have agreed and requested that this Court retain jurisdiction to oversee compliance with the terms of this Stipulated Settlement and to resolve any motions to modify such terms. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

1     24.     The terms of this Stipulated Settlement constitute the entire agreement of the

2  Parties, and no statement, agreement or understanding, oral or written, which is not contained

3  herein, shall be recognized or enforced.

4
5     25.     The terms of this Stipulated Settlement shall become effective upon entry of an

6  order by the Court ratifying this Stipulated Settlement.

7     Respectfully Submitted on this 19th day of February, 2016,

8                                              JOHN C. CRUDEN
9                                              Assistant Attorney General
                                               SETH M. BARSKY, Chief
10                                             S. JAY GOVINDAN,
                                               Assistant Chief
11
12                                             /s/ J. Brett Grosko (by permission)
13                                             _____
                                               J. BRETT GROSKO, Trial Attorney
14                                             U.S. Department of Justice
                                               Environment & Natural Resources Division
15                                             Wildlife & Marine Resources Section
                                               Ben Franklin Station
16                                             P.O. Box 7611
                                               Washington, DC 20044-7611
17                                             Phone: (202) 305-0342
                                               Fax: (202) 305-0275 (fax)
18                                             brett.grosko@usdoj.gov
19
20                                             *Attorneys for Federal Defendants*
21                                             /s/ Collette Adkins
22                                             _____
                                               Collette Adkins (MN Bar # 035059X)
23                                             Justin Augustine (CA Bar # 235561)
                                               CENTER FOR BIOLOGICAL DIVERSITY
24                                             P.O. Box 595
                                               Circle Pines, MN 55014-0595
25                                             Phone: (651) 955-3821
26                                             cadkins@biologicaldiversity.org
                                               jaugustine@biologicaldiversity.org
27
28                                             *Attorneys for Plaintiff*

                                    12

1

2      PURSUANT TO STIPULATION, IT IS ORDERED that the Settlement Agreement

3   executed by the Parties is hereby incorporated into this Order; and

4      IT IS FURTHER ORDERED that this Court shall have continuing jurisdiction to enforce

5   this Order and the terms of the Settlement Agreement.

6

7      DATED: _____

8

9

10                              _____

11                                    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28